José Luis García y Edmee Vázquez de García, demandantes y recurrentes, *v.* Northern Assurance Co., demandada y recurrida.

*Número:* R-64-147 *Resuelto:* 13 de abril de 1965

---

*Martín Almodóvar Acevedo* y *Eugenio S. Belaval, Jr.*, abogados de los recurrentes; *Rieckehoff, Calderón, Vargas & Arroyo,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El día 13 de abril de 1962, Edmee Vázquez resbaló en la acera frente al número 1025 de la Calle William Jones de Río Piedras. Sufrió daños. En unión a su esposo demandó al Gobierno de la Capital. Luego desistieron de su acción.

El 28 de agosto de 1962 radicaron demanda contra la Northern Assurance Co. aseguradora del Gobierno de la Capital. La demandada solicitó la desestimación de la demanda. Alegó que el Gobierno de la Capital no fue notificado del accidente dentro de los 90 días de ocurrido según lo requiere el Art. 96 de la vigente Ley Municipal, 21 L.P.R.A. sec. 1603 (ed. 1961).[1] Al plantear la demandada esta sola

---

[1] Dispone así el precepto citado:

"(a) Toda persona que tenga reclamaciones de cualquier clase contra una corporación municipal, por daños personales o a la propiedad, causados por culpa o negligencia de la corporación municipal, deberá presentar al jefe ejecutivo de ésta una notificación escrita, haciendo constar en forma clara y concisa la fecha, sitio, causa y naturaleza general del daño sufrido, la cuantía de la compensación monetaria o el tipo de remedio adecuado al

cuestión y no presentar la póliza en evidencia, tenemos que presumir que de no prosperar, los términos de la misma la hacen responsable una vez establecida la culpa o negligencia del municipio.

El tribunal declaró con lugar la moción. Al resolverla expresó que: .

"La demandante, ni alegó ni mostró que se hubiera dado estricto cumplimiento al estatuto vigente, (21 LPRA 1603) que exige notificación al Municipio dentro de los noventa (90) días de la ocurrencia del accidente.

---

daño sufrido, los nombres y direcciones de sus testigos y la dirección del reclamante así como el sitio donde recibió tratamiento médico en primera instancia.

"(b) Dicha notificación se entregará al jefe ejecutivo de la corporación municipal remitiéndola por correo certificado, o por diligenciamiento personal o en cualquier otra forma fehaciente reconocida en derecho.

"(c) La referida notificación escrita se presentará al jefe ejecutivo municipal dentro de los 90 días siguientes a la fecha en que el reclamante tuvo conocimiento de los daños que reclama. Si el reclamante estuviere mental o físicamente imposibilitado para hacer dicha notificación dentro del término prescrito, no quedará sujeto a la limitación anteriormente dispuesta, viniendo obligado a hacer la referida notificación dentro de los 30 días siguientes a la fecha en que cese la incapacidad.

"(d) Si el perjudicado fuere un menor de edad, o fuere persona sujeta a tutela, la persona que ejerza la patria potestad o la custodia del menor, o el tutor, según fuere el caso, vendrá obligada a notificar la reclamación dentro de los 90 días siguientes a la fecha en que tuvo conocimiento de los daños que reclama. Lo anterior no será obstáculo para que el menor o la persona sujeta a tutela haga la referida notificación dentro del término prescrito, a su propia iniciativa, si quien ejerce la patria potestad, custodia o tutela no lo hiciere.

"(e) No podrá iniciarse acción judicial de clase alguna contra una corporación municipal por daños causados por la culpa o negligencia de aquélla si no se hubiese efectuado la notificación escrita en la forma y manera y dentro de los plazos prescritos en este Subtítulo. Lo anterior es aplicable únicamente a los daños causados por cualquier corporación municipal con posterioridad a la vigencia de este Subtítulo.

"(f) El término corporación municipal incluye todos los municipios de Puerto Rico y la Capital de Puerto Rico; y el término jefe ejecutivo incluye al alcalde de cualquier municipio de Puerto Rico y el Administrador de la Capital de Puerto Rico.

"(g) Esta sección no modificará en forma alguna, para aquellos reclamantes que cumplan con sus disposiciones, el término prescriptivo fijado por el inciso 2 del art. 1868 del Código Civil de Puerto Rico, edición de 1930, sec. 5298 del Título 31."

"Tal requisito es uno de cumplimiento estricto que debe considerarse de naturaleza sustantiva. Mangual vs. Tribunal Superior, (31 de mayo 1963 DPR).

"El hecho de demandarse a la compañía aseguradora en vez de al Municipio no altera la situación legal expuesta, ya que la responsabilidad de la aseguradora sería una de naturaleza subsidiaria de conformidad a la póliza de seguro, pues la compañía respondería únicamente cuando el asegurado venga legalmente obligado a pagar por haber incurrido en responsabilidad."

A tenor con lo expuesto dictó sentencia desestimando la acción. Accedimos a revisarla.

Establecimos en *Mangual* v. *Tribunal Superior*, 88 D.P.R. 491 (1963) que "en Puerto Rico el cumplimiento del requisito de notificación [al municipio] es una condición previa de cumplimiento estricto para poder demandar al municipio." La cuestión ahora a determinar es si el no haber notificado al municipio impide reclamar directamente del asegurador.

Hasta el año 1952 la Ley de Seguros de Puerto Rico en su Art. 175, disponía que: "Cuando el causante de los daños estuviere asegurado contra el accidente que produjo la pérdida o los daños y en el caso en que una póliza de seguro se hubiere expedido para beneficiar a un tercero, la acción para reclamar la indemnización que proceda, podrá presentarse conjuntamente contra el asegurado y la compañía aseguradora . . . ." En *Autoridad de Fuentes Fluviales* v. *Irizarry*, 72 D.P.R. 644 (1951) interpretamos la anterior disposición en el sentido de que no habiéndose emplazado al asegurado no podía dictarse sentencia contra la compañía de seguros. Dictaminamos que el Art. 175 era "un medio puramente procesal para evitar dos pleitos; que no crea derecho sustantivo alguno; que no procede un pleito contra la compañía de seguros únicamente; y que una condición previa a la responsabilidad de la compañía es que se resuelva que el asegurado es responsable."

Evidentemente preocupados por el resultado manifestamos al final de *Irizarry* que "quizás la Legislatura debiera

enmendar la sección 175 para permitir bajo estas circunstancias el pleito contra las compañías aseguradoras únicamente; obviamente, el no poderse citar al demandado personalmente es una ventaja (windfall) para la compañía."

En el año 1951 resolvimos a *Irizarry*. En el año 1952 la Asamblea Legislativa enmendó el Art. 175 para que se leyera así: "Cuando el causante de los daños estuviere asegurado contra el accidente que produjo la pérdida o los daños y en el caso en que una póliza de seguro se hubiere expedido para beneficiar a un tercero, la acción para reclamar la indemnización que proceda, *podrá presentarse contra la compañía aseguradora únicamente, o conjuntamente contra el asegurado y la compañía aseguradora.*" (Énfasis suplido.)

Al explicar en el hemiciclo el propósito de la enmienda que se hizo al Art. 175 en el año 1952, el entonces Presidente de la Comisión de lo Jurídico Civil de la Cámara de Representantes, Honorable Arcilio Alvarado manifestó:

"Actualmente, tal como rige nuestra Ley, para poder demandar a la Compañía de Seguros tiene que incluirse como parte demandada al asegurado. Si no se incluye, no se puede demandar a la Compañía de Seguros.

"Bajo esta disposición técnica han fracasado en los tribunales acciones de daños, de un hijo contra un padre, a pesar de haber una póliza de seguro que cubría el riesgo. Como el hijo no podía demandar al padre, aunque había una Compañía de Seguros que respondía, la Compañía escapó la responsabilidad.

"Si este proyecto se convirtiese en Ley, no siendo necesario al asegurado demandar conjuntamente con la Compañía aseguradora, tal vez aquel pleito y tal vez otros podrían prosperar porque la acción podría establecerse directamente contra la Compañía de Seguros por el riesgo establecido en la póliza." Actas Cámara de Representantes (1952) pág. 760.

Al considerar la enmienda de 1952 en *Pérez* v. *Maryland Casualty Co.*, 78 D.P.R. 475, 480 (1955) expresamos que "nada hay en el lenguaje de la enmienda o en su historial legislativo que sugiera que la Asamblea Legislativa quiso ir más lejos y crear, como en Luisiana, 'una causa de acción

separada y distinta contra el asegurador' diferente a la causa de acción contra la persona responsable del daño únicamente o en unión del asegurador."

Y más adelante en *Pérez* a la pág. 481 expresamos que "la enmienda de 1952 meramente cambió el procedimiento por el cual la responsabilidad subsidiaria del asegurador, que todavía dependía de la responsabilidad del asegurado, pudiera establecerse; ahora puede determinarse demandando al asegurador únicamente. Todavía es necesario probar la negligencia del asegurado y su responsabilidad primaria aun cuando por su forma el pleito sea uno contra el asegurador únicamente."

Si bien es verdad que en la explicación de la enmienda hecha por el Presidente de la Comisión que estudió el proyecto que la proponía, hay indicios de que la Asamblea Legislativa tuvo la intención de adoptar la regla de Luisiana al efecto de crear una acción separada y distinta contra el asegurador, evidentemente la enmienda aprobada no permitía tal interpretación.

En *Pérez* explicamos la regla prevaleciente en Luisiana. En el escolio 3 expusimos que "[u]n estatuto de Luisiana le concede al demandante en un caso de accidente de automóvil a su opción '. . . el derecho de acción directa contra el asegurador . . .'. Y la '. . . referida acción puede instituirse contra el asegurador únicamente o contra el asegurado y el asegurador, conjuntamente e *in solido*.' La. Rev. Stat., Tít. 22, sec. 655. El alcance de este estatuto fue recientemente descrito en *Lumbermen's Mut. Cas. Co.* v. *Elbert*, 348 U.S. 48, 99 L.ed. 83, 85-6: '. . . los tribunales de Luisiana han distinguido entre acciones instituidas por un perjudicado contra el asegurador únicamente y aquellas instituidas ya contra la persona responsable del daño solamente o ya en unión al asegurador. En la primera el asegurador está impedido de interponer defensas tales como el status matrimonial de las partes, de ordinario disponibles a la persona responsable

del daño. *Edwards* v. *Royalty Indemnity Co.*, 182 La. 171, 161 So. 191. De igual manera el asegurador está severamente restringido de interponer defensas técnicas basadas en los términos de la póliza, tales como falta de notificación cuando el perjudicado radica una acción directa. *Jackson* v. *State Farm Mut. Automobile Ins. Co.*, 211 La. 19, 29 So.2d 177. Si bien cualquiera de las dos clases de acción exige prueba de la negligencia de la persona responsable del daño, en la acción separada contra el asegurador el demandante debe establecer también la responsabilidad bajo la póliza. Los tribunales de Luisiana han caracterizado el estatuto como creador de una causa de acción separada y distinta contra el asegurador, que puede ser elegida por un perjudicado en vez de su acción contra la persona responsable del daño. *West* v. *Monroe Bakery*, 217 La. 189, 46 So.2d 122; *Jackson* v. *State Farm Mut. Auto Ins. Co. (La.)*, supra."

Apenas pasado un mes de resolver a *Pérez* afirmamos en *Landol* v. *Colón*, 78 D.P.R. 602 (1955) al distinguir nuestro estatuto del de Luisiana que "la teoría de los casos que interpretan el estatuto de Luisiana a este efecto es que la causa de acción del demandante contra el asegurador es diferente y separada de su causa de acción contra el asegurado" y reiteramos que la Sec. 175 nuestra "que permite un pleito contra el asegurador únicamente, era sólo procesal y no creó como en Luisiana, una causa de acción separada y distinta contra el asegurador."

Reconocimos, no obstante, que "la Asamblea Legislativa claramente ha demostrado su intención por las enmiendas al Art. 175 de eliminar algunas de las defensas técnicas de las compañías aseguradoras que no afectan los méritos del caso" pero declaramos que "[t]oda vez que en Puerto Rico la causa de acción del demandante contra una compañía de seguros continúa siendo subsidiaria y contingente a la responsabilidad del asegurado para con el demandante, la regla aquí, contraria a la de Luisiana, es que la falta de una notificación razonable

de la ocurrencia del accidente continúa bajo las debidas circunstancias siendo una defensa adecuada de la compañía aseguradora."

Expuesto lo anterior en *Landol* en el escolio 1 comentamos que "nos damos cuenta de que a veces esta regla funciona injustamente al privar a un demandante de una causa de acción que de otro modo sería válida contra las compañías aseguradoras. Pero compete a la Asamblea Legislativa—y no a este Tribunal—determinar si el Art. 175 debe ser modificado otra vez para establecer una doctrina en Puerto Rico, germana a la regla de Luisiana, en cuanto a la notificación y otras defensas."

Así, en *Pérez* y *Landol* expusimos claramente el alcance de la regla prevaleciente en Luisiana y expresamos que competía a la Asamblea Legislativa determinar si el Art. 175 debía ser enmendado otra vez para establecer la regla de aquel estado en nuestra jurisdicción.

Evidentemente inspirada en la anterior observación la Asamblea Legislativa en el año 1957, al aprobar un nuevo Código de Seguros, incorporó una disposición fundamental igual a la vigente en Luisiana. ([2]) Dispone así:

---

([2]) La disposición del estado de Luisiana en la parte pertinente lee así en la actualidad:

"The injured person or his or her survivors or heirs hereinabove referred to, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Art. 42, Code of Civil Procedure. This right of direct action shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and whether or not such policy contains a provision forbidding such direct action, provided the accident of injury occurred within the State of Louisiana. Nothing contained in this Section shall be construed to affect the provisions of the policy or contract if the same are not in violation of the laws of this State. It is the intent of this Section that any action brought hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which

"La persona que sufriere los daños y perjuicios tendrá, a su opción, una acción directa contra el asegurador conforme a los términos y limitaciones de la póliza, acción que podrá ejercitar contra el asegurador solamente o contra éste y el asegurado conjuntamente. La responsabilidad del asegurador no excederá de aquella dispuesta en la póliza, y el tribunal deberá determinar no solamente la responsabilidad del asegurador, si que también la cuantía de la pérdida. Cualquier acción incoada conforme a esta sección estará sujeta a las condiciones de la póliza o contrato y a las defensas que pudieran alegarse por el asegurador en acción directa instada por el asegurado." Art. 20.030. 26 L.P.R.A. sec. 2003 (ed. 1958).

Conociendo el alcance de la regla de Luisiana nuestra Asamblea Legislativa adoptó un estatuto sustancialmente idéntico al de aquel estado. La validez del estatuto de Luisiana y de la interpretación que al mismo se le ha dado por la Corte Suprema de aquel estado fue sostenida por la Corte Suprema de los Estados Unidos en *Watson* v. *Employers Liability Corp.*, 348 U.S. 66 (1954). Recientemente en *Trigo* v. *Travelers Ins. Co.*, 91 D.P.R. 868 (1965), expresamos al interpretar la nueva disposición estableciendo la acción directa:

"En términos claros y precisos que no requieren interpretación el apartado 20.010 del nuevo Código de Seguros creó una responsabilidad sustantiva absoluta de parte del asegurador hacia un perjudicado cuando ocurre una pérdida cubierta por la póliza de seguro, responsabilidad que no se hizo depender ni del pago que efectuare el asegurado en virtud de una sentencia contra él ni tampoco se hizo depender de que exista dicha sentencia. El apartado 20.030 usa un lenguaje muy similar al de la legislación de Louisiana a la cual nos referimos en el caso de *Pérez* como creadora de una responsabilidad sustantiva del asegurador directamente, a tono con la interpretación que en igual sentido los tribunales de ese Estado habían dado a dicha legislación."

---

could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this State." 15A LSA—R.S. 22:655 (Supp. 1965).

 Es evidente pues, que en nuestra jurisdicción ahora rige una disposición similar a la de Luisiana que permite una acción directa contra la aseguradora distinta, separada de la acción contra el asegurado. En *Lumbermen's Mut. Cas. Co.* v. *Elbert*, supra, el Tribunal Supremo de los Estados Unidos, ya hemos visto, expuso el alcance de la regla de Luisiana. Explicó que en la acción directa el asegurador está impedido de interponer las defensas personales o privativas del asegurado. Además el asegurador está severamente restringido de interponer defensas técnicas basadas en los términos de la póliza, tales como falta de notificación cuando el perjudicado radica una acción directa.

En *Edward's* v. *Royal Indemnity*, 161 So. 191 (La. 1935), citado en *Landol* la Corte Suprema de Luisiana interpretó una disposición igual a la que aparece en nuestro Código de Seguros al efecto de que "cualquier acción incoada . . . estará sujeta a las condiciones de la póliza o contrato y a las defensas que pudieran alegarse por el asegurador en acción directa instada por el asegurado". Se dijo:

"Se observará que el último párrafo del estatuto no dispone que el asegurador puede interponer aquellas defensas que el asegurado puede interponer contra un reclamante por daños, sino que indica claramente que tal acción estará sujeta a aquellas defensas que pudieran alegarse por el asegurador en acción directa instada por el asegurado. En resumen, si el asegurado paga una reclamación a un tercero a quien ha causado daños, la compañía aseguradora tendría derecho a negarse a reembolsar al asegurado en caso de que el asegurado hubiera pagado al reclamante sin que hubiera responsabilidad. Por ejemplo, si el asegurado se encontrara libre de culpa o si el reclamante fuere culpable de negligencia contribuyente, el asegurador podría defenderse de la reclamación de reembolso por el asegurado.

"¿Puede decirse que la Legislatura tuvo la intención de incluir defensas puramente personales entre el asegurado y la persona perjudicada, o quiso limitar las defensas a aquellas que estaban necesariamente relacionadas con o surgían del accidente, o que provenían de los términos y condiciones de la póliza?"

Y entonces llega a la conclusión de que el asegurador no puede invocar las defensas privativas del asegurado. A ese efecto dice:

"Por consiguiente, es nuestra opinión que la legislatura tuvo la intención de otorgarle al asegurador el derecho de alegar las defensas que podría alegar contra el asegurado, pero no aquellas defensas puramente personales entre el asegurado y el reclamante, y que de ninguna manera hubieren surgido o estuvieren relacionadas con el accidente o la póliza."

Ver también *Futch* v. *Fidelity & Casualty Co.*, 166 So.2d 274 (La. 1964); *West* v. *Monroe Bakery*, 46 So.2d 122 (La. 1950); *Ruiz* v. *Clancy*, 162 So. 734 (La. 1935); Miller: *Aspects of a Public Liability & Property Damage Policy in Louisiana*, 15 Tul. L. Rev. 79 (1940).

En *Harvey* v. *New Amsterdam Casualty Co.*, 6 So.2d 774 (Ct. App. La. 1942) se expuso en relación con la regla expuesta en *Edwards,* lo siguiente:

"Por lo tanto, puede observarse que el Tribunal Supremo expresamente dice que el reclamante tiene tanto una causa de acción como un derecho de acción contra el asegurador cuando tiene una causa de acción contra el asegurado, pero que debido a una incapacidad relativa, no tiene un derecho de acción contra el asegurado. En resumen, el tribunal sostiene que, bajo la Ley 55 de 1930, el asegurador no puede interponer defensas puramente personales al asegurado."

Lo expuesto, en forma alguna quiere decir que el asegurador asume una responsabilidad absoluta. Ésta depende de que la póliza cubra el riesgo. A ese efecto se dijo en *Sheeren* v. *Gulf Ins. Co. of Dallas, Texas*, 174 So. 380 (Ct. App. Ore. 1937):

". . . cuando los hechos demuestran que la póliza cubría un riesgo determinado, la inmunidad personal del causante de los daños no protege a su asegurador. No hemos dicho ni podemos decir que, en virtud del estatuto se ha creado a favor del perjudicado un derecho a recobrar del asegurador bajo circunstancias no cubiertas por la póliza. El asegurador siempre podrá inter-

poner contra un perjudicado las defensas que hubiese podido interponer contra el asegurado."

Ver además: *Musmeci* v. *American Automobile Insurance Co.*, 146 So.2d 498 (Ct. App. 4to. Cir. La. 1962).

 Está en orden ahora considerar la cuestión planteada en el presente recurso. El municipio no fue notificado dentro del plazo establecido en la ley de la ocurrencia del accidente. (³) El asegurador solicitó se desestimara la acción ejercitada por ese fundamento. Pero en el actual estado de nuestro derecho la falta de notificación, sólo puede invocarla el municipio. El requisito de notificar dentro de los noventa días de ocurrido el accidente como condición previa a la radicación de una demanda contra un gobierno municipal, es de cumplimiento indispensable y de efectos impedientes, *Mangual* v. *Tribunal Superior*, supra. Si no se notifica, no puede ejercitarse la acción contra el municipio pero nada impide que se ejerza contra una compañía aseguradora, por tratarse de la acción directa contra ésta. A la compañía aseguradora no le aprovecha la disposición mencionada de la Ley Municipal, que en efecto es únicamente una condición para el ejercicio de la acción contra el municipio.

*Por lo expuesto procede revocar la sentencia recurrida y devolver el caso para ulteriores procedimientos consistentes con lo expuesto anteriormente.*

El Juez Asociado Señor Blanco Lugo concurre con el resultado.

---

(³) Los demandantes alegan además que ellos notificaron al municipio dentro de los 90 días desde que ellos tuvieron conocimiento del monto de los daños reclamados. Es innecesario discutir, vista la conclusión a que hemos llegado, si el período de 90 días se cuenta desde que ocurrió el accidente, o desde que se conoce con certeza el monto de los daños sufridos.