# 96 DTA 113

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE SAN JUAN

AMPARO RIVERA RIVERA, SU ESPOSO DANIEL ROSARIO ALVERIO
RAYMOND ROSARIO Y DANIEL BURGOS
Demandantes-Apelados

v.

MUNICIPIO DE SAN JUAN, ESTADO LIBRE ASOCIADO DE PUERTO RICO,
ADMIRAL INSURANCE CO Y JOHN DOE
Demandados-Apelantes el primero y la tercera

Núm. KLAN-95-01159

San Juan, Puerto Rico, a 8 de agosto de 1996

Panel integrado por su Presidente, Juez Negrón Soto
y los Jueces González Román y Urgell Cuebas

Urgell Cuebas, Juez Ponente

### TEXTO COMPLETO DE LA SENTENCIA

El Municipio de San Juan (Municipio) y su aseguradora, Admiral Insurance Co., apelan de una Sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan, en la que se les condenó pagarle a los demandantes-apelados, Sra. Amparo Rivera Rivera, su esposo, su hijo y su nieto, la suma de cuarenta y tres mil quinientos dólares ($43,500) en concepto de daños y perjuicios, cinco mil dólares ($5,000) de honorarios de abogado, interés desde la presentación de la demanda, más las costas del litigio.

Los apelantes alegan que el tribunal de instancia no tenía jurisdicción sobre el Municipio para dictar la sentencia. Alegan, además, que erró al concluir que el Municipio fue negligente e imputarle un setenta y cinco por ciento (75%) de negligencia comparada. También, aducen que las indemnizaciones son excesivas y que erró el tribunal recurrido al determinar que fueron temerarios.

Procedemos a confirmar la Sentencia en todos sus extremos al concluir que no se cometieron los errores señalados.

### I

Los apelados presentaron una demanda en daños y perjuicios contra el Municipio de San Juan, como operador del Estadio Hiram Bithorn, y su compañía aseguradora, Admiral Insurance Co., por los daños sufridos por la Sra. Amparo Rivera Rivera, en adelante Sra. Rivera, su esposo, su hijo y su nieto. El 29 de enero de 1992 la Sra. Rivera se fracturó la patela de la rodilla izquierda, al resbalar y caerse en uno de los baños de servicio sanitario del Estadio Hiram Bithorn.

Los días 26 y 27 de octubre de 1994 se celebró la vista en su fondo del caso, en la que testificaron los demandantes, los peritos médicos de las partes, el administrador del Estadio Hiram Bithorn, Sr. Abelardo Menay, y la Sra. Faustina Vélez Alejandro, en adelante Sra. Vélez, auxiliar de conserje a cargo de los baños de damas el día en que la Sra. Rivera sufrió el accidente.

El tribunal de instancia formuló, entre otras, las siguientes determinaciones de hechos:

*"1. El 29 de enero de 1992, en horas de la noche, se celebró en el Estadio Municipal Hiram Bithorn el último juego de pelota de la serie final de 1992 de la Liga de Pelota Profesional Invernal de Puerto Rico. El parque, cuya capacidad máxima es de aproximadamente diez y ocho mil personas, se encontraba lleno de fanáticos. Los co-demandantes Amparo Rivera, Raymond Rosario y Daniel Burgos asistieron esa noche a presenciar el juego.*

*2. Dicho parque cuenta con ocho cuartos de servicio sanitario, de los cuales cuatro son dedicados al uso de damas y cuatro para el uso de caballeros. Esa noche todos los baños estaban abiertos para el uso del público en general.*

*3. Para realizar esa noche la limpieza y mantenimiento de los cuatro baños para damas, la administración del parque destacó únicamente a Faustina Vélez Alejandro, de setentitres años de edad, quien turnaba su presencia en los cuatro cuartos de damas durante la actividad. De la prueba desfilada concluimos que se demoraba aproximadamente veinticinco minutos en cada cuarto.*

*4. El uso intenso que el público en general le daba a los lavamanos de los cuatro cuartos de servicio sanitario causaba que los pisos de éstos se mojaran constantemente. La propia Faustina*

*Vélez declaró que es costumbre del público mojarse el cabello, la cara y sacudirse el agua con las manos.*

*5. Esa noche y mientras la demandante Amparo Rivera presenciaba el juego, sintió la necesidad de usar el cuarto de servicio sanitario por lo que le pidió a su hijo Raymond Rosario que la acompañara. Cuando entró al cuarto de baño se percató que el piso estaba mojado, pero prosiguió al inodoro a hacer su necesidad biológica. Cuando salía del inodoro y se dirigía al lavamanos, resbaló en el piso y se cayó. Allí fue asistida por varias personas, quienes la atendieron y llamaron a su hijo. Luego de examinarla y diagnosticarle preliminarmente una posible fractura en su rodilla izquierda, los paramédicos adscritos al parque esa noche, le recomendaron llevarla a un dispensario de salud en Hato Rey. El hijo y el nieto de la demandante se opusieron y ante la posibilidad de una fractura optaron por llevarla en su automóvil particular al Centro Médico en Río Piedras.*

*6. La demandante Amparo Rivera llegó junto a sus familiares al Centro Médico esa misma noche. Allí le tomaron radiografías que confirmaron la fractura de la rodilla izquierda a nivel de la patela. Permaneció toda la noche en una camilla ya que en el Centro Médico no le pudieron asignar habitación de inmediato.*

*7. Al día siguiente, la familia de la demandante Amparo Rivera se comunicó con el Doctor Ramón Colóm Coll, Cirujano Ortopédico, quien recomendó que fuera llevada al Auxilio Mutuo donde la trataría médicamente. Ese mismo día fue trasladada al Hospital Auxilio Mutuo, y quedó internada. Se le inyectó una dosis del tranquilizante Toradol y se le volvieron a tomar radiografías de la rodilla y del tobillo del pie izquierdo. La rodilla mostró fractura conminuta de la rotula con desplazamiento de los fragmentos. Los médicos contemplaron una intervención quirúrgica para reparar la fractura, pero optaron por consultar con un cardiólogo, ya que la demandante tenía un historial de previos tratamientos por condición arteriosclerótica y mostraba ser alérgica a la penicilina. Se le practicó un electrocardiograma, el cual fue interpretado como "abnormal" y no se pudo descartar un posible infarto antiguo del miocardio."*

*El 31 de enero de 1992, el cardiólogo Francisco Olazabal, opinó que la demandante estaba en condiciones de tolerar la cirugía contemplada.*

*8. El 3 de febrero de 1992, la demandante fue finalmente llevada a la Sala de Operaciones del Hospital Auxilio Mutuo, donde el cirujano ortopeda, Dr. Colom Coll, efectuó una patelectomía o remoción de la patela en su rodilla izquierda. El día 7 de febrero de 1992, la demandante fue dada de alta del hospital con su rodilla inmobilizada con una férula posterior de yeso.*

*9. La demandante continuó bajo observación del cirujano ortopeda mediante visitas de seguimiento que duraron hasta el 25 de octubre de 1993. A su vez, recibió tratamiento de rehabilitación física al cuidado del fisiatra, Dr. Eddie Bisbal, desde marzo hasta agosto de 1992. El 22 de octubre de 1992 la demandante regresó al consultorio del Dr. Bisbal con un recrudecimiento de la sinovitis en la rodilla izquierda, la cual fue atribuida a su condición post fractura. Se le aplicó nuevamente más tratamientos de fisioterapia para reducir la hinchazón y dolor en su rodilla. Una recaída similar ocurrió el 19 de mayo de 1993, la cual requirió más sesiones de fisioterapia.*

*10. Como consecuencia del accidente y la lesión recibida en su rodilla izquierda, la demandante experimentó dolores físicos y angustias mentales que perduraron por un término mayor de año y medio. Aun cuando ha concluido su tratamiento médico, todavía sufre de limitación en el arco de movimiento actual de su rodilla, cierto grado de cojera y recurrentes dolores propios de la condición de su rodilla operada. La ausencia de la patela en su rodilla izquierda le produce una inestabilidad de movimiento que la lleva a usar bastón para caminar y le causa dificultad para realizar muchas de las actividades que solía realizar sin problemas antes del accidente, como ir de compras, subir y bajar escaleras, caminar largas distancias, arrodillarse y hacer gran parte de las faenas de su hogar.*

*11. La demandante ha quedado con limitaciones permanentes en sus funciones fisiológicas generales... .*

*.... [L]a demandante está afectada por episodios recurrentes de sinovitis en su rodilla izquierda*

*que se repiten "[Ha quedado con] un impedimento físico permanente de un ocho porciento (8%) en sus funciones fisiológicas generales...".*

*12. El co-demandante Daniel Rosario, esposo de la demandante Amparo Rivera, sufrió profundas angustias mentales producto del accidente y la lesión física sufrida por su esposa. ....*

*13. Los co-demandantes Raymond Rosario y Daniel Burgos, hijo y nieto de la demandante Amparo Rivera, también sufrieron angustias mentales... ".*

A base de las anteriores determinaciones de hechos, el tribunal recurrido concluyó que el Municipio había sido negligente por lo cual lo responsabilizó de los daños sufridos por la Sra. Rivera. Además, determinó que la Sra. Rivera había sido también negligente, al entrar al baño estando consciente que éste estaba mojado. Por dicha negligencia, el tribunal le asignó a ella un veinticinco (25%) por ciento de responsabilidad y al Municipio un setenta y cinco por ciento (75%). En adición, el tribunal concluyó que las demandadas-apelantes litigaron en forma temeraria.

La parte dispositiva de la sentencia condenó a los apelantes ■ al pago de cuarenta y tres mil quinientos dólares por concepto de daños. Además, impuso la cantidad de cinco mil dólares ($5,000) de honorarios de abogado e intereses desde la presentación de la demanda, más las costas del litigio. ■

No conformes con la Sentencia, los apelantes presentaron recurso de apelación ante este Foro. En éste señalan que el tribunal de instancia erró al dictar sentencia sin tener jurisdicción y al concluir que el Municipio fue negligente, fijándole un setenta y cinco por ciento (75%) de responsabilidad. Además, señalan que las indemnizaciones concedidas son excesivas y no procedía la determinación de que fueron temerarios.

## II

En el primer señalamiento de error los apelantes reclaman que el tribunal de instancia dictó sentencia sin tener jurisdicción sobre el Municipio, amparándose en que no se le notificó al alcalde dentro de los noventa (90) días de ocurrido el accidente, según requerido por el Art. 15.003 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4703.

Primeramente, debemos consignar que este planteamiento no fue levantado en las defensas afirmativas de la contestación a la demanda. No es hasta que se recurre ante este Foro que por primera vez se trae el mismo.

Al interpretar el requisito similar sobre la notificación en demandas en daños y perjuicios contra el Estado, en *Zambrana Maldonado v. E.L.A.*, 129 D.P.R. ___ (1992), **92 JTS 12**, pág 9173, el Tribunal Supremo, expresó lo siguiente:

*"Con relación a este requisito de notificación previa al Estado, estatuido en el Artículo 2A de la Ley de Reclamaciones y Demandas Contra el Estado, también hemos seguido la misma trayectoria liberalizadora. Hemos resuelto que "si bien es un requisito de cumplimiento estricto, no alcanza calidad de condición precedente jurisdiccional. Loperena Irizarry v. E.L.A., 106 D.P.R. 357, 359 (1977); que éste es renunciable; que si existe una aseguradora a quien pueda demandarse directamente no hay que cumplir con éste, Cortés Román v. E L.A, 106 D.P.R. 504, 516 (1977); que la iniciación de la acción judicial por el municipio o Estado dentro del término establecido por la ley para la notificación la hace inoperante, Insurance Co. of P. R. v. Ruiz, 96 D.P.R. 175, 179 (1968); y que "donde el riesgo de que la prueba objetiva pueda desaparecer es mínimo, donde hay constancia efectiva de la identidad de los testigos y donde el Estado, por tanto, puede fácilmente investigar y corroborar los hechos alegados en la demanda que se radique "no es de aplicación inexorable" el requisito de notificación previa. Meléndez Gutiérrez v. E.L.A. ", 113 D.P.R. 811, 815 (1983).*

Finalmente en *Passalacqua v. Mun. de San Juan,* [116 D.P.R. 618 (1985)], pág. 629, "enfatizamos que no extenderíamos sin sentido crítico el requisito de la notificación; que [e]stas condiciones limitativas del derecho de las personas a solicitar reparación deben interpretarse restrictivamente; y que no hay razón alguna para distinguir en el caso de cuerpos políticos, pues conocida es la tendencia

prevaleciente a exigirles responsabilidad en la misma forma y extensión que a las personas naturales'" (Cita de *Insurance Co. of P.R. v. Ruiz, supra,* a la pág. 179) (Énfasis en original).

No constituyendo la falta de notificación un requisito jurisdiccional, el cual se pueda plantear en cualquier etapa debe oportunamente levantarse, al así no hacerlo el Municipio renunció a ésta. 32 L.P.R.A. Ap III, R 10 2. Por ello es improcedente levantar dicha defensa en alzada, como pretende el Municipio.

En segundo lugar, el término de noventa (90) días no aplica a la compañía aseguradora, la co-demandada Admiral Insurance C. En *García v. Northern Assurance Co.,* 92 D.P.R. 245, 256 (1965), nuestro Tribunal Supremo decidió que:

*".. Si no se notifica no puede ejercitarse la acción contra el municipio pero nada impide que se ejerza contra una compañía aseguradora, por tratarse de la acción directa contra ésta. A la compañía aseguradora no le aprovecha la disposición mencionada de la Ley Municipal, que en efecto es únicamente una condición para el ejercicio de la acción contra el Municipio."*

No se cometió el primer error.

### III

Como segundo señalamiento los apelantes aducen que erró el tribunal de instancia al determinar que el Municipio incurrió en negligencia al imputarle una negligencia comparada de setenta y cinco por ciento (75%). En el tercer señalamiento de error ellos argumentan que las compensaciones son excesivas.

Por estar íntimamente relacionados estos errores, los discutiremos conjuntamente. Como la determinación de la existencia de negligencia, la distribución de responsabilidad entre las partes y la fijación de las cuantías de daños, descansan fundamentalmente en la apreciación del tribunal de instancia de la prueba desfilada en el caso, es necesario que examinemos el ámbito de la revisión de los tribunales apelativos sobre las determinaciones de hechos formuladas por el tribunal de instancia. La norma aplicable fue discutida en *Rivera Pérez v. Cruz Corchado,* 119 D.P.R. 8, 14 (1987), como sigue:

*"Es norma reiterada en nuestra jurisdicción que este Tribunal no intervendrá con la apreciación que de la prueba desfilada haya hecho el tribunal de instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto. Quintana Tirado v. Longoria, 112 D.P.R. 276 (1982); Acosta & Rodas, Inc. v. PRAICO, 112 D.P.R. 583 (1982); Velázquez v. Ponce Asphalt, 113 D.P.R. 39 (1982); Velez v. Srio. de Justicia, 115 D.P.R. 533 (1984); Rodríguez Cancel v. A.E.E., 116 D.P.R. 443 (1985); Valencia Ex parte, 116 D.P.R. 909 (1986). Debe recordarse, sin embargo, que "el arbitrio del juzgador de hechos es respetable, más no es absoluto" y que una "apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal". Vda. de Morales v. De Jesús Toro, 107 D.P.R. 826, 829 (1978)*

Más adelante, en la misma opinión, el Tribunal Supremo indica que el tribunal revisador sólo variará la apreciación de la prueba hecha por el tribunal de instancia cuando la misma:

*"no sólo no representa "el balance más racional, justiciero y jurídico de la totalidad de la evidencia que desfilara ante dicho Tribunal". Ramos Acosta v. Caparra Dairy Inc., 113 D.P.R. 357, 364 (1982), sino que no encuentra apoyo alguno en la prueba que desfilara ante el foro de instancia." Abudo Servera v. A.T.P.R., 105 D.P.R. 728 (1977)".*

Las determinaciones de credibilidad que hace el juzgador de los hechos a nivel de instancia nos es merecedora de gran deferencia. La razón para dicha deferencia fue expuesta por el Tribunal Supremo en *Pueblo v. Cabán Torres,* 117 D.P.R. 645, 654 (1986) como sigue:

*".....El fundamento o base en que se apoya la referida norma es obvio: dicho juzgador es el que, de ordinario, está en mejor posición para aquilatar la prueba testifical ya que fue el que oyó y vio declarar a los testigos como expresamos en Ortiz v. Cruz Pabón, 103 D.P.R. 939, 947 (1975):*

*.......y es que no sólo habla la voz viva. También hablan las expresiones mímicas: el color de las mejillas, los ojos, el temblor o consistencia de la voz, los movimientos, el vocabulario no habitual del testigo, son otras circunstancias que deben acompañar el conjunto de una declaración testifical y sin embargo, **todos estos elementos se pierden en la letra muda de las actas,** por lo que se priva al Juez de otras tantas circunstancias que han de valer incluso más que el texto de la declaración misma para el juicio valorativo que ha de emitir en el momento de fallar; **le faltará el instrumento más útil para la investigación de la verdad: la observación....***" (Enfasis en original.)

La parte apelante no reclama en su apelación existencia de pasión, prejuicio o parcialidad en la apreciación de la evidencia por el tribunal recurrido. En nuestro examen del expediente a nivel apelativo no hemos encontrado nada que nos lleve a concluir que el tribunal erró en su apreciación de la prueba, o que ésta estuviese matizada por pasión, prejuicio o parcialidad. Por lo tanto, aceptadas las determinaciones de hechos del tribunal recurrido, sólo nos resta pasar juicio si éstas justifican la conclusión de que el Municipio fue negligente y si las cuantías de daños fijadas son razonables.

La responsabilidad del Municipio en este caso, es similar a la de una persona o empresa que opera un establecimiento público con propósito de lucro. En *Cotto v. C. M. Ins Co* , 116 D.P.R. 644, 650 (1985), el Tribunal Supremo expresó:

"No hay duda que una persona o empresa que opera un establecimiento abierto al público con el objeto de llevar a cabo operaciones comerciales para su propio beneficio debe hacer lo posible por mantener dicho establecimiento en condiciones tales de seguridad que los clientes que patrocinan el mismo no sufran ningún daño; en otras palabras, corresponde al dueño de un negocio o al propietario del mismo mantener el área a la que tienen acceso sus clientes como un sitio seguro. A esos efectos véanse *Gutiérrez v. Bahr,* 78 D.P.R. 473 (1955); *Goose v. Hilton Hotels,* 79 D.P.R. 523 (1956); *Santaella Negrón v. Licari,* 83 D.P.R. 887 (1961); *Weber v. Mejías,* 85 D.P.R. 76 (1962), y *Aponte Betancourt v. Meléndez,* 87 D.P.R. 652 (1963). Deberá observarse, sin embargo, que --como expresáramos en *Goose v. Hilton Hotels, supra,* págs. 527-528-- el dueño del establecimiento "no es un asegurador de la seguridad de los clientes del negocio, y su deber sólo se extiende al ejercicio del cuidado razonable para su protección" y que el visitante tiene que probar que el dueño del establecimiento no "ha ejercido el cuidado debido para que el local sea seguro para el". En los casos antes citados impusimos responsabilidad por cuanto los mismos envolvían **condiciones peligrosas existentes** dentro de los establecimientos correspondientes, las cuales eran de conocimiento de los propietarios o su conocimiento podía imputárseles a éstos." (Enfasis en original).

Recientes decisiones reiteran la vigencia de la norma anterior, a saber *Reyes v. Supermercado Mr. Special,* 139 D.P.R. ___ (1996), **96 JTS 6;** *Colón García v. Toys "R" Us,* ___ D.P.R. ___ (1995), **95 JTS 153;** *Colón Miranda v. Plaza Las Américas, Inc,* 136 D.P.R. ___ (1994), **94 JTS 84;** *Soc. Gananciales v. G. Padín Co , Inc.*, 117 D.P.R. 94 (1986).

Las determinaciones de hechos formuladas por el tribunal de instancia que a continuación resumimos, son suficientes para la conclusión de que el Municipio fue negligente:

*"1- Que la noche del accidente sólo había una persona encargada de los cuatro (4) baños de damas, la Sra. Vélez, cuando el estadio estaba lleno a toda su capacidad de personas*

*2- Que al hacer las rondas de baño en baño la Sra. Vélez demoraba aproximadamente veinticinco (25) minutos en cada uno;* ▪ *y*

*3- Que el uso intenso que se les daban a los baños ese día causaba que el piso de éstos se mojara constantemente."*

A base de los hechos considerados probados, el tribunal de instancia concluyó que existía una situación de peligro, o sea, de potencial daño a los usuarios de los baños, y que tal situación debió haber sido prevista por el Municipio, sobre todo tomando en cuenta la gran cantidad de personas que se esperaba en el último juego de la serie final de béisbol.

Luego de revisar la transcripción del testimonio de la Sra. Vélez y los escritos de las partes, concurrimos con el tribunal de instancia en su apreciación. Un hombre prudente y razonable tenía la obligación de preveer este peligro, unido al deber de tomar acción para eliminar o minimizar el mismo. ■ El Municipio no actuó según era su deber, por lo que incurrió en negligencia.

El tribunal de instancia también concluyó que la Sra. Rivera fue negligente, ya que a pesar de que ella percibió que el piso del baño estaba mojado entró a éste. Ella no presentó evidencia que demostrara que tomó las precauciones necesarias en tales circunstancias para evitar su caída. A base de esto, el tribunal recurrido determinó que ella fue negligente en un veinticinco por ciento (25%) y el Municipio en un setenta y cinco por ciento (75%). La conclusión del tribunal de instancia sobre la negligencia comparada es razonable tomando en cuenta la prueba presentada, así como las circunstancias particulares que ocurren en este caso. El accidente que sufrió la Sra. Rivera, se debió mayormente a la culpa y negligencia del Municipio, unida a la de ella, al no tomar las precauciones necesarias. La distribución de la negligencia está sostenida por la prueba. No incidió el tribunal recurrido.

## IV

En el tercer señalamiento de error los apelantes sostienen que erró el tribunal de instancia al conceder indemnizaciones excesivas. La norma respecto a la revisión en apelación de la valorización de los daños concedidos por el tribunal de instancia, según expuesta por el Tribunal Supremo en *Rodríguez Cancel v. A E.E.,* 116 D.P.R. 443, 451452 (1985), es como sigue:

*"No hay duda que en relación con esta difícil y angustiosa labor de estimación de daños, los tribunales de instancia, de ordinario, están en una mejor posición que los tribunales apelativos para evaluar la situación por cuanto son los que tienen contacto directo con la prueba que a esos efectos presenta la parte que los reclama. Publio Díaz v. E L.A., 106 D.P.R. 854 (1978). Ahí la razón para la norma de abstención judicial; esto es, de que este Tribunal no intervendrá con la decisión que a ese respecto emitan los tribunales de instancia a menos que las cuantías concedidas sean ridículamente bajas o exageradamente altas, Valldejuli Rodríguez v. A.A A., 99 D.P.R. 917 (1971), Urrutia v. A.A A., [103 D.P.R. 643 (1975)], y de que la parte que ante este Tribunal solicita la modificación de las sumas concedidas a nivel de instancia viene obligada a demostrar la existencia de las circunstancias que hacen meritorio que se modifiquen las mismas."* Canales Velázquez v. Rosario Quiles, 107 D.P.R. 757 (1978) (Enfasis suplido).

La estimación de la cuantía de daños es particularmente difícil en cuanto a los daños por sufrimientos y angustias morales. En *Riley v. Rodríguez de Pacheco,* 119 D.P.R. 762, 805 (1987), el Tribunal Supremo expuso al respecto que:

*"[L]a determinación de una compensación justa y razonable por los daños sufridos [es] tarea que constituirá un reto aun para un Salomón del siglo XX." Emotional Disability and Compensation, Traumatic Medicine & Surgery for the Attorney, Washington, Ed. Butterworth, 1962, Vol. 6, pág. 82. La apreciación humana valorativa de elementos que no son ostensibles y visibles sino intangibles (emociones tales como dolor, alegría, tristeza, frustración, paz, tranquilidad del espíritu, honor y otras) no está exenta de cierto grado de especulación."*

En cuanto a las partidas de daños otorgados al esposo, al hijo y al nieto de la Sra. Rivera ya está firmemente reconocido en nuestra jurisdicción que *"una persona tiene derecho a indemnización por los sufrimientos, trastornos morales o angustias mentales que haya experimentado como consecuencia de los daños materiales o de otra índole que, a su vez, se le han causado a sus parientes directamente." Santini Rivera v. Serv. Air, Inc.,* 137 D.P.R. ___ (1994), **94 JTS 121**, pág. 184 y los casos allí citados.

Hemos examinado las determinaciones de hechos formuladas por el tribunal de instancia sobre las lesiones sufridas por la Sra. Rivera, así como las angustias y sufrimientos de todos los apelados y las cuantías otorgadas y no encontramos que las mismas son exageradamente altas que ameriten nuestra revisión. Tampoco los apelantes nos han puesto en posición de determinar que éstas eran excesivas.

Reiteradamente ha señalado el Tribunal Supremo, que la valoración de los daños descansa en la

sana discreción del juzgador. *Torres Solís, et al v. A.E.E.,* 136 D.P.R. ___ (1994), **94 J T S 89**; *José A. Quiñones López y otros v. Padró Manzano Porzas y otros,* Opinión y Sentencia del 25 de junio de 1996, **96 J.T.S. 95,** pág. 1315.

Concluimos que no se cometió el tercer error señalado.

## V

En el cuarto señalamiento de error los apelantes impugnan la determinación del tribunal de instancia en cuanto a que procedieron con temeridad en el litigio.

La determinación de temeridad depende también de la sana discreción del tribunal. Al respecto el Tribunal Supremo expresó en *Miranda v. E.L.A.,* 137 D.P.R. ___, **95 J.T.S. 152**, pág. 528, lo siguiente:

*"Reafirmamos que "[l]a determinación sobre si una parte ha procedido con temeridad o no descansa en la sana discreción del tribunal", Ramírez v. Club Cala de Palmas, 123 D.P.R. 339, 349 (1989). "La partida de honorarios de abogados concedida no variará en apelación, a menos que la misma sea excesiva, exigua o constituya un abuso de discreción", Ramírez v. Club Cala de Palmas, supra,* pág. 350. (Enfasis en original).

Además, su propósito fundamental es *"[p]enalizar o sancionar a aquellas partes que por su temeridad obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obligan a otra parte a asumir y sufrir las molestias, gastos, trabajo y consecuencias de un litigio innecesario." Corpak Inc. v. Art. Printing, Inc. v. Ramallo Brothers Printing, Inc., 90 JTS 37, res. de 9 de marzo de 1990; Fernández v. San Juan Cement Co. Inc., [118 D.P.R. 713(1987)], a la pág 713. Mediante este mecanismo los tribunales protegen a los litigantes honestos de imposiciones dilaciones y gastos innecesarios. Bernier, Elfren, El Derecho de Accesión en Puerto Rico, Barcelona, 1970, pág. 31". Pérez Marrero v. Col. Cirujanos Dentistas,* **90 J.T.S. 124,** res. en 15 de septiembre de 1992. (Enfasis en original.)

Véase también, *José A. Quiñones López y otros v. Pedro Nazario Pozas y otros, supra,* a la pág. 1316. En *Fernández v. San Juan Cement Co. Inc.,* 118 D.P.R. 713 (1987), págs 718-719, el Tribunal Supremo clarifica la definición operacional del concepto de temeridad y a manera de ejemplo señala algunos actos particulares que justifican la declaración de temeridad. Dicha opinión nos indica que existe temeridad de parte de un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito. Entre las acciones que ameritan la declaración de temeridad, el Tribunal Supremo incluye cualquiera que haga necesario un pleito que se pudo evitar; que produzca la necesidad de que otra parte incurra en gestiones evitables. Entre otros, el Tribunal cita como ejemplos de temeridad: si el demandado contesta la demanda y niega su responsabilidad total, aunque la acepte posteriormente, si la parte demandada en efecto cree que la cantidad reclamada es exagerada y esa es la única razón que tiene para oponerse a las peticiones del demandante y no admite francamente su responsabilidad limitando la controversia a la fijación de la cuantía a ser concedida; o si litiga un caso del que se desprendía *prima facie* la negligencia.

En el caso de autos los apelantes no aceptaron su responsabilidad, limitada o parcial, aunque de los hechos ésta era manifiesta. No abusó de su discreción el tribunal apelado al efectuar la determinación de temeridad.

De otro lado, señala el Municipio que no procedía contra éste la imposición de intereses pre-sentencia, amparándose en el último párrafo del Art 15.005 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4705, el cual dispone que:

*"La sentencia que se dicte contra cualquier municipio de acuerdo con la Sec. 4703 de este título no incluirá, en ningún caso, el pago de intereses por período alguno anterior a la sentencia ni concederá daños punitivos. La imposición de costas se regirá por el procedimiento ordinario. "*

Procede que a tenor con lo anterior, modifiquemos la sentencia apelada para dejar sin efecto la

disposición sobre el pago de intereses pre-sentencia contra el Municipio. █

## VI

En el quinto señalamiento de error la apelante reclama que el memorando de costas fue sometido pasado el término de diez (10) días provisto para ello en la Regla 44 1(b) de Procedimiento Civil, 32 L.P.R.A. Ap III, R. 44 1(b).

La sentencia fue notificada por la secretaría del tribunal de instancia el 2 de agosto de 1995. La notificación a la parte demandante fue enviada al P.O. Box 194234 y eventualmente devuelta a la Secretaría del tribunal por el correo, ya que esa no era la dirección postal del abogado de la parte demandante. La secretaría del tribunal envió una notificación enmendada el 26 de agosto de 1995, al P.O. Box 195234, que era el apartado correcto del abogado del demandante. No obstante, éste se enteró por otro medio de que había recaído sentencia y presentó el memorando de costas el 24 de agosto de 1995. En vista de lo anterior, el término para presentar el memorando de costas no comenzó a decursar en la fecha que alegan los apelantes. Por ello, no erró el tribunal de instancia al concluir y aprobar el memorando de costas.

## VII

Por las consideraciones antes expuestas, se modifica la Sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de San Juan, en cuanto al pago de intereses presentencia por parte del Municipio de San Juan, disponiéndose que la responsabilidad de éste sobre los intereses se limita a los que se devenguen a partir de la fecha en que la Sentencia. Así modificada, la Sentencia del tribunal recurrido, se confirma en todos sus otros extremos.

Regístrese y notifíquese.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Sonia Pacheco Román
Secretaria General

### ESCOLIOS 96 DTA 113

**1.** Estas figuras reflejan sólo el setenta y cinco por ciento (75%) de los daños determinados por el tribunal. Además, incluyen una enmienda *nunc pro tunc* efectuada para corregir un error aritmético en la Sentencia.

**2.** Posteriormente, el tribunal aprobó el memorando de costas por mil seiscientos noventa y cinco dólares ($1,695).

**3.** Aun si aceptamos el testimonio de la Sra. Vélez, en el sentido que ella se demora entre diez (10) y quince (15) minutos en dar la vuelta a los baños, nuestra conclusión seguiría siendo la misma, pues este lapso de tiempo es uno irrazonable teniendo en cuenta que se anticipaba que el estadio estaría lleno a capacidad y que a los baños se les daría un intenso y continuo uso.

**4.** En la sentencia el tribunal concluye que:

*"Era razonablemente previsible que la atención que podía dar la encargada a cada baño sería insuficiente para mantener los pisos secos y evitar que se mojaran y se convirtieran en un peligro para los usuarios de esas facilidades. En tales circunstancias la designación de una sola persona para atender la limpieza y el mantenimiento de cuatro baños de damas no fue y no puede considerarse una medida cautelar prudente y razonable del Municipio."*

**5.** El Art. 15.005, *supra*, aplica sólo al Municipio pero no así a la co-demandada, Admiral Insurance Co. Por lo tanto, la modificación no altera la obligación de la aseguradora, quien sigue siendo responsable de los intereses pre-sentencia.