ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| EDWIN FRANCISCO COLÓN MALDONADO, esposa IRIS NEREIDA NÚÑEZ PÉREZ y la SOCIEDAD LEGAL DE GANANCIALES compuesta por ambos<br><br>Apelada<br><br>v.<br><br>NÉLIDA MARÍA LUNA COLÓN<br><br>Apelante | KLAN202301109 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Comerío<br><br>Caso Núm.:<br>CR2021CV00074<br><br>Sobre:<br>Servidumbre |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

### SENTENCIA

En San Juan, Puerto Rico, a 18 de enero de 2024.

Comparece Nélida María Luna Colón (en adelante, apelante y/o señora Luna Colón), para solicitarnos la revisión de la *Sentencia* emitida el 24 de octubre de 2023, y notificada el 25 de octubre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Comerío (en adelante, TPI).[1] Mediante el dictamen apelado, el foro primario declaró Ha Lugar una *Demanda* sobre servidumbre de paso. Sobre dicha *Sentencia*, la apelante presentó una reconsideración,[2] la cual fue reconsiderada favorablemente en cuanto a la imposición de honorarios por temeridad, no así en cuanto al derecho de servidumbre, mediante *Resolución* emitida y notificada el 10 de noviembre de 2023.[3]

Por los fundamentos que expondremos, se *confirma* la *Sentencia* apelada, según reconsiderada.

---

[1] Apéndice de la apelante, a las págs. 10-26.
[2] *Id.,* a las págs. 3-8.
[3] *Id.,* a las págs. 1-2.

Número Identificador

SEN2024_____

# I

El 29 de marzo de 2021, se presentó una *Demanda* en el caso ante nos.[4] En la *Demanda,* se expone que en el predio de terreno de la señora Luna Colón se encuentra enclavada una estructura residencial. El predio de terreno del señor Edwin Francisco Colón Maldonado (en adelante, señor Colón Maldonado) y la señora Iris Nereida Núñez Pérez (en adelante, señora Núñez Pérez y en conjunto, parte apelada) colinda con el predio de terreno de la señora Luna Colón. Ambos predios se benefician de una servidumbre de paso que le da acceso al lugar. La parte apelada expuso que para llegar a su predio era necesario pasar por el frente del predio de la apelante. Sin embargo, explicaron que la apelante, sin su consentimiento, extendió la verja de su propiedad sobre el área que da acceso a la propiedad de la parte apelada, entiéndase, les obstruyó el acceso. A esos efectos, la parte apelada le solicitó al foro primario: (i) $25,000.00 dólares para resarcir daños económicos a su propiedad, así como angustias y sufrimientos mentales; (ii) que la apelante fuera encontrada incursa en temeridad, por lo que se le impusiera una suma no menor de $5,000.00 dólares en pago de las costas, gastos y honorarios de abogados; (iii) que se declare el derecho de servidumbre de paso a favor de la finca de la parte apelada; y, (iv) se ordene la remoción de la parte de la verja y las plantas que obstruyen el acceso al predio de la parte apelada.

Así las cosas, el 15 de junio de 2021, se presentó la *Contestación a Demanda.*[5] Allí, negó la mayoría de las alegaciones y presentó defensas afirmativas.

De lo que sigue, el Juicio en su Fondo fue celebrado. Subsiguientemente, el 24 de octubre de 2023, el tribunal *a quo*

---

[4] Apéndice de la parte apelada, a las págs. 1-3.
[5] *Id.,* a las págs. 4-6.

emitió la *Sentencia* apelada, notificándose al día siguiente.[6] En ella, declaró Con Lugar la solicitud presentada por la parte apelada y estableció una servidumbre de paso; declaró No Ha Lugar una solicitud de indemnización económica para resarcir presuntos daños por angustias y sufrimientos mentales; e impuso la suma de $3,000.00 dólares por concepto de honorarios de abogado por entender la parte apelante que actuó con temeridad.[7]

Producto del juicio celebrado, el foro primario emitió catorce (14) determinaciones de hechos[8], las cuales transcribimos *in extenso:*

1. La parte demandante es dueña de un solar con cabida de 2,675.4258 metros cuadrados en el barrio Barrancas del pueblo de Barranquitas. Consta inscrita al folio 113 del tomo 235 de Barranquitas, finca número 4,929. Adquirieron los demandantes por compra mediante la escritura número 45 otorgada en Aibonito, el día 19 de diciembre de 2020, ante la notaria Dilianette Santini Rivera. La cooperativa la Aiboniteña había reposeído este solar y el demandante lo adquirió.

2. La parte demandada es dueña de solar con cabida 1,219.8847 metros cuadrados y residencia enclavada. Consta inscrita al folio 74 del tomo 100 de Barranquitas, finca número 9,403. Adquirió por compra mediante las escrituras números 7 y 23, los días 26 de febrero de 2000 y 15 de agosto de 2000, ante el notario Juan Antonio Núñez García.

3. Los solares de la parte demandada y la demandante son colindantes.

4. La finca de la parte demandante se encuentra enclavada.

5. Los solares del área se benefician de una servidumbre de paso que le da acceso al lugar. Que la servidumbre de paso antes mencionada fue aprobada por la Administración de Reglamentos y Permisos (ARPE), en el caso número 84-41-C-047-BPL, según Resolución expedida el día 3 de mayo de 1985, en Bayamón, Puerto Rico, mediante plano archivado en el Registro de la Propiedad bajo el número 2740, y con la siguiente descripción: RÚSTICA: Solar "A", Cabida 918.0028 metros cuadrados destinada para el uso público. Esto como parte del plan de lotificación en el área. Exhibits V y VII. Que fue

---

[6] Apéndice de la apelante, a las págs. 10-26.

[7] *Id.,* a las págs. 23-25.

[8] En la Sentencia se enumeran trece (13) determinaciones de hechos. No obstante, en realidad son catorce (14) determinaciones de hechos, la confusión se debe a que el número cinco (5) se encuentra repetido en dos (2) ocasiones.

construido un camino de uso público que pasa por frente del predio de la demandada y que da acceso a otros solares con edificaciones hasta la carretera estatal número 152. Exhibit VIII. El Exhibit VIII (H), muestra el lugar en controversia cuando el demandante lo adquirió, siendo el solar del demandante el que est[á] posterior a la verja de alambre eslabonado y el camino de uso público. El mismo que llega hasta la carretera estatal número 152.

5. El demandante posee otra propiedad que se beneficia de la misma servidumbre. Cuando compr[ó] la propiedad objeto de la controversia, no vio ningún tipo de documento porque conocía al anterior dueño. Compró a sabiendas que la finca no tenía entrada.

6. Que, en el pasado, a raíz de fenómenos naturales como el huracán Georges el terreno que comprende el camino de uso público en controversia había cedido, pero luego con los arreglos realizados, el camino ha perdurado, incluso luego del huracán María. Esto se refleja en el Exhibit VIII (G).

7. Que existe lo que parece ser unos desprendimientos u hondonadas, pero estas son dentro de la propiedad de la demandante, no hacia el área del camino público. Exhibit VII (B)(G)(I).

8. Que la parte demandada, luego de radicada la demanda instaló en el área del camino p[ú]blico unos postes de color amarillo con una cadena e impidió el paso de la parte demandante por el área. Exhibit VIII (A)(I)(G).

9. Que, para dar mantenimiento a su solar, la parte demandante bajaba su tractor por el remanente de una finca colindante desde un camino de uso público hasta su finca. Declara la parte demandante que bajaba el tractor con mucho riesgo. El tribunal tuvo la oportunidad de caminar esta área y subir hasta el camino público a través del remanente. Ciertamente hay áreas bastante inclinadas o escalpadas. Exhibit VIII(E). Además, tuvimos la oportunidad de transportarnos en el vehículo hasta el lugar. Desde ese lugar hay que pasar un camino de uso público a otro y la distancia hasta la carretera estatal 152 es considerablemente m[á]s larga que desde el camino púb[l]ico que nos ocupa en la controversia. Por medio de este último la distancia es mucho más corta y recta hacia la carretera estatal número 153.

10. Según lo antes descrito, se tiene acceso hasta la vía pública desde el solar enclavado del demandante por dos lugares. Uno el camino público de donde se solicita la servidumbre. Exhibit VIII(B)(G)(I)(H). El otro es el que se muestra en el Exhibit VIII(E).

11. El tribunal tuvo la oportunidad de caminar el área y entrar al solar de la parte demandante por un predio de terreno corto, a solo pasos del camino público por donde se solicita el acceso

según está marcado en el Exhibit VIII(I) y muestran los Exhibit VII(G) y (H). Se trata de un área recta donde es susceptible de pasar del camino [p]úblico al solar del demandante caminando corta distancia.

12. Que conforme observado en la vista ocular y las fotos ilustrativas, hay espacio suficiente para una entrada. Que la p[é]rdida de terreno no es considerable ni afectaría la residencia de la demandada ya que la entrada est[á] m[á]s arriba. Se observa de forma clara en el Exhibit VIII (G), siendo el solar del demandante el que está luego del alambre eslabonado.

13. Que el demandante adquirió la propiedad de la cooperativa estando la finca enclavada. Que el aislamiento de esta finca sin acceso a la vía pública, no proviene de actos de la propia voluntad de la parte demandante.[9]

En la *Sentencia* apelada, el TPI concluyó que:

[…] Por otro lado, como quedó demostrado en la vista ocular que compareció el tribunal estando presentes todas las partes y sus representantes legales, a simple vista se pueden demostrar las condiciones favorables para el (sic) establecer la servidumbre. [...] El tribunal entiende que el derecho de servidumbre de paso por el predio solicitado qued[ó] demostrado con acuerdo a lo solicitado y la prueba presentada. Las fotografías admitidas en evidencia son ilustrativas, la vista ocular fue demostrativa. Como expuesto en las determinaciones de hechos, del camino público de donde se solicita acceso [a] la finca de la parte demandante queda a pasos. Solo se camina en línea recta unos pocos pasos para llegar desde el camino público hasta la finca del demandante. Esta misma característica lo hace el punto de acceso menos perjudicial para el predio sirviente de la demandada a simple vista.  [...] El que la demandada luego de radicar la demanda se haya dedicado a ornamentar el lugar de la solicitada servidumbre de paso, sembrando plantas entre otras cosas, no quita la característica de que sea el punto más cercano desde el camino público hasta la finca del demandante y además menos perjudicial […].[10]

El foro primario dispuso, además, que el terreno que ocupara esa servidumbre de paso se delineara de acuerdo a como transcurre el camino de uso público en línea recta, encontrando de frente el solar del demandante.[11] También, dispuso que los metros que fuesen necesarios para establecer la servidumbre fuesen determinados conforme a lo establecido por las agencias

---

[9] Apéndice de la apelante, a las págs. 13-15.
[10] *Id.,* a las págs. 22-23.
[11] *Id.,* a la pág. 23.

gubernamentales concernidas en cuanto a anchura y características para la utilización normal de la finca dominante.[12] Además, sentenció que, si los metros necesarios para establecer la servidumbre quedaran dentro de los terrenos de la apelante, debían ser tasados. Por último, concluyó que, salvo acuerdo entre las partes, el valor asignado constituiría la compensación a beneficio de la apelante como predio sirviente.[13]

Inconforme, el 9 de noviembre de 2023, la apelante presentó una *Moción Solicitando Reconsideración y Honorarios de Abogado*.[14] En respuesta, mediante *Resolución* emitida y notificada el 10 de noviembre de 2023, el foro primario dispuso lo siguiente:

> En cuanto a la reconsideración sobre la imposición de honorarios por temeridad, podría indicarse que existía una desavenencia en cuanto a quién favorece el derecho aplicable de manera que la controversia debía ser adjudicada por el tribunal, *Santiago Colón v[.] Supermercados Grande*[,] 166 DPR 796 (2006), razón por la cual se declara con lugar la reconsideración con relación a este aspecto. En cuanto a la reconsideración sobre el derecho de servidumbre, No ha lugar.

Insatisfecha aún, el 11 de diciembre de 2023, compareció la señora Luna Colón, mediante un recurso de *Apelación*, en el cual elaboró los siguientes dos (2) errores presuntamente cometidos por el foro primario:

> Primer Error: Erró el Honorable Tribunal de Primera Instancia al establecer la servidumbre de paso sin que existiera prueba pericial en cuanto a la viabilidad del terreno, habiéndose establecido que dicho terreno ha cedido en el pasado, debiendo haber tenido esto la necesidad de ser aprobado por ingeniero ante el requisito de menos onerosidad de la servidumbre.

> Segundo Error: Erró el Honorable Tribunal de Primera Instancia al establecer el derecho a servidumbre antes de que se estableciera con claridad el tamaño de la misma y el valor de esta. Muy a pesar de que la sentencia exige del demandante el cumplimiento de esto, entendemos que conforme dispone el [C]ódigo [C]ivil, dichas acciones debieron realizarse antes.

---

[12] Apéndice de la apelante, a la pág. 23.
[13] *Id.,* a la pág. 23.
[14] *Id.,* a las págs. 3-9.

El 10 de enero de 2024, la apelante presentó su *Alegato en Oposición*. Contando con el beneficio de la comparecencia de ambas partes procederemos a exponer el derecho aplicable.

**II**

**A. Recurso de Apelación**

La Regla 52.2 (a) de las Reglas de Procedimiento Civil[15], dispone que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días desde el archivo en autos de copia de la notificación de la sentencia recurrida. Como es conocido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no admite justa causa, es improrrogable, y que su incumplimiento es insubsanable.[16] La correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial.[17] Como corolario de lo anterior, la Regla 13(A) del Reglamento de este Tribunal establece que:

> Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del término jurisdiccional de treinta días contados desde el archivo en autos de una copia de la notificación de la sentencia.[18]
> [...]

No obstante, el término de treinta (30) días para acudir en alzada puede quedar interrumpido mediante la presentación oportuna de una moción de reconsideración fundamentada.[19] En tal caso, el curso del término para apelar comienza a partir del archivo en autos copia de la notificación de la resolución que resuelve la moción.[20] Esto, a pesar de que se haya declarado la moción No Ha Lugar.

---

[15] 32 LPRA Ap. V, R. 52.2 (a).
[16] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000). *Arriaga v. FSE*, 145 DPR 122, 131 (1998). *Loperena Irizarry v. ELA*, 106 DPR 357, 360 (1977).
[17] *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998).
[18] 4 LPRA Ap. XXII-B, R. 13 (A).
[19] 32 LPRA Ap. V, R. 47.
[20] *Id.*

**B. Deferencia judicial**

Las determinaciones hechas por los foros inferiores sobre la prueba recibida merecen gran deferencia de los foros revisores.[21] En ese sentido, y como regla general, no debemos intervenir con las determinaciones que este haya efectuado en virtud de la presunción de corrección de la que gozan.[22] A esos efectos, aunque no está exenta de la posibilidad de toda revisión, si la actuación del tribunal a *quo* no está desprovista de base razonable ni perjudica los derechos sustanciales de una parte, lo lógico es que prevalezca el criterio del TPI a quien corresponde la dirección del proceso.[23] Se puede preterir esta deferencia cuando el juzgador de hechos haya incurrido en pasión, prejuicio, parcialidad, error manifiesto, o cuando un análisis integral de la prueba así lo justifique.[24] De igual forma, se podrá intervenir con la determinación del TPI cuando la referida valoración se aparte de la realidad fáctica o resulte inherentemente imposible o increíble.[25] El nivel de pasión, prejuicio o parcialidad que hace falta demostrar para impugnar exitosamente las determinaciones del TPI sobre los hechos varía de caso a caso.[26] Los foros apelativos podremos intervenir con tal apreciación luego de realizar una evaluación rigurosa y que, de esta, surjan serias dudas, razonables y fundadas.[27]

El Tribunal Supremo de Puerto Rico (en adelante, Tribunal Supremo) ha determinado que un juez incurre en pasión, prejuicio o parcialidad si actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con

---

[21] *Pueblo v. Pérez Núñez*, 208 DPR 511, 514 (2022).
[22] *Id.,* 529.
[23] S*ierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).
[24] *Id. Pueblo v. Calderón Álvarez,* 140 DPR 627, 644 (1996).
[25] *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). *Pueblo v. Arlequín Vélez,* 204 DPR 117, 148 (2020). *Pueblo v. Martínez Landrón,* 202 DPR 409, 424 (2019) citando a *Pueblo v. Maisonave*, 129 DPR 49, 63 (1991). *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011). *Pueblo v. Viruet Camacho*, 173 DPR 563, 584 (2009). *Pueblo v. Irizarry*, 156 DPR 780, 789 (2002). *Pueblo v. Acevedo Estrada,* 150 DPR 84, 99 (2000).
[26] *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 775-776 (2013).
[27] *Pueblo v. Pérez Núñez, supra.*

respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna.[28] Por otro lado, un tribunal de justicia incurre en un abuso de discreción cuando el juez: (i) no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (ii) por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste; o, (iii) no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, los sopesa y calibra livianamente.[29] Cuando lo que se impugna es la adjudicación de credibilidad y la determinación de los hechos, la conducta, participación y expresiones del juez durante el proceso judicial serán los elementos que se tomarán en consideración para evaluar este incurrió en pasión, prejuicio o parcialidad.[30]

En el caso *Torres Pérez v. Colón García,* nuestro Alto Foro expresó:

> Donde se halla la médula del problema adjudicativo es cuando toca al juez dirimir conflictos en la prueba, decidir sobre probabilidades, descartar imposibles, hurgar más allá de los testimonios para encontrar las verdades que muchas veces se ocultan tras meras apariencias, suplir a base de sus propias experiencias y conocimientos de la vida aquellos hechos no aportados articuladamente por los testimonios, pero inescapables al proceso inductivo de su inteligencia.[31]

A luz de lo anterior, la llamada deferencia judicial está predicada en que los jueces de las salas de instancia están en mejor posición para aquilatar la prueba testifical porque tienen la oportunidad de oír, ver y apreciar el comportamiento de la persona

---

[28] *Dávila Nieves v. Meléndez Marín, supra,* 782.
[29] *Pueblo v. Rivera Santiago, 176 DPR 559, 580 (2009).*
[30] *Dávila Nieves v. Meléndez Marín, supra,* 776.
[31] *Torres Pérez v. Colón García,* 105 DPR 616, 623 (1977).

testigo.[32] Por ello, la valoración que lleva a cabo el foro primario se presume correcta.[33] Recalcamos que, la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez a la prueba presentada.[34] Por su parte, un foro apelativo cuenta solamente con "récords mudos e inexpresivos", por lo que se le debe respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos.[35] No obstante, si la apreciación de la prueba no representa el balance más racional, justiciero y jurídico de la totalidad de la prueba y cuando la evaluación se distancie de la realidad fáctica o esta es inherentemente imposible o increíble tenemos la responsabilidad ineludible de intervenir.[36] Sin embargo, a pesar de que existe esta norma de deferencia judicial, también hemos indicado que, cuando las conclusiones de hecho del foro de instancia estén basadas en prueba pericial o documental, el tribunal revisor se encuentra en la misma posición que el foro recurrido.[37]

En consecuencia, al este tribunal apelativo enfrentarse a la tarea de revisar las determinaciones del foro de instancia, no debe intervenir con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad efectuadas por el mismo, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad; (ii) incurrió en un craso abuso de discreción; o, (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[38]

---

[32] *Santiago Ortiz v. Real Legacy et al.*, *supra*. *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013).
[33] *Id. Pueblo v. Santiago*, 176 DPR 133, 148 (2009). *Pueblo v. Acevedo Estrada*, *supra*.
[34] *Dávila Nieves v. Meléndez Marín*, *supra*, 771.
[35] *Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 177 DPR 345, 356 (2009). *Trinidad v. Chade*, 153 DPR 280, 291 (2001).
[36] *Santiago Ortiz v. Real Legacy et al.*, *supra*. *González Hernández v. González Hernández*, *supra*.
[37] *González Hernández v. González Hernández*, *Id.*
[38] *González Hernández v. González Hernández*, *Id.*, 776. *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 811 (2009). *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000). *Pueblo v. Irizarry*, *supra*. *Pueblo v. Maisonave*, *supra*, 62-63.

### C. Las servidumbres

El Título VI del Código Civil de Puerto Rico de 2020 aborda los derechos reales de goce. Por su parte, el Capítulo III de dicho Título aborda lo relacionado a las servidumbres. La servidumbre es definida como el derecho real limitado que recae sobre una finca, denominada finca sirviente, en beneficio de otra finca o de una o varias personas o comunidad individualizadas.[39] A la luz de lo anterior, si la relación es entre fincas, la que recibe la utilidad se llama finca dominante.[40] A tales efectos, la utilidad puede consistir en el otorgamiento al titular de la finca dominante o a las personas, según sea el caso, de un determinado uso de la finca sirviente, o en una reducción de las facultades del titular de la finca sirviente.[41]

En lo que respecta al objeto de las servidumbres, estas pueden constituirse sobre finca propia o ajena; de igual forma, pueden constituirse servidumbres recíprocas entre fincas dominantes y sirvientes.[42] Las servidumbres pueden originarse de dos (2) maneras.[43] Son voluntarias las servidumbres que se constituyen por negocio jurídico bilateral o unilateral; mientras que, son forzosas aquellas servidumbres cuya constitución puede ser exigida en los casos contemplados en la ley.[44] Acentuamos que, las servidumbres son inseparables de la finca a la que pertenecen activa o pasivamente.[45]

Existen tres (3) modos de constituir una servidumbre: (i) por negocio jurídico celebrado voluntaria o forzosamente; (ii) por sentencia, cuando se trata de una servidumbre forzosa en los casos y las condiciones previstas en la ley y el obligado a constituirla se

---

[39] 31 LPRA § 8501, Art. 935.
[40] *Id.*
[41] *Id.*
[42] 31 LPRA § 8502, Art. 936.
[43] 31 LPRA § 8504, Art. 938.
[44] *Id.*
[45] 31 LPRA § 8505, Art. 939.

niega a hacerlo voluntariamente; y, (iii) por usucapión.[46] Resaltamos que, al constituirse una servidumbre se entienden concedidos todos los derechos necesarios para su uso.[47] A su vez, se entiende que el titular sirviente asume todas las obligaciones inherentes a su relación con la finca gravada.[48] A raíz de ello, la servidumbre debe ejercerse del modo más adecuado a fin de obtener la utilidad para el titular dominante y, a su vez, del modo menos incómodo y lesivo para el titular sirviente.[49]

En particular, la Sección cuarta del Capítulo III aborda lo concerniente a las servidumbres forzosas. Así, las cosas, las servidumbres forzosas de paso a favor de una finca sin comunicación suficiente con la vía pública, de acceso a una red general, de energía solar, de energía eólica y de acueducto se rigen por dicho capítulo.[50] Consecuentemente, la persona titular del derecho de propiedad o de derechos reales posesorios de una finca sin salida o con salida insuficiente a una vía pública puede exigir a sus vecinos el acceso a ella, mediante el establecimiento de una servidumbre de paso de anchura y características suficientes para la utilización normal de la finca dominante.[51] Así, pues, la servidumbre de paso o el acceso a la red general debe darse por el punto menos perjudicial o incómodo para la finca sirviente y, si es compatible, por el punto más beneficioso para la finca dominante.[52]

Enfatizamos que, la servidumbre forzosa solo puede establecerse previo pago de una indemnización consistente en el valor de la parte afectada de la finca sirviente y de la reparación de los perjuicios que pueda ocasionar al titular sirviente.[53], Ahora bien,

---

[46] 31 LPRA § 8521, Art. 944.
[47] 31 LPRA § 8532, Art. 949.
[48] *Id.*
[49] 31 LPRA § 8533, Art. 950.
[50] 31 LPRA § 8541, Art. 954.
[51] 31 LPRA § 8542, Art. 955.
[52] 31 LPRA § 8547, Art. 960.
[53] 31 LPRA § 8548, Art. 961.

si el titular sirviente también utiliza la servidumbre u obtiene algún beneficio de ella, la indemnización se reduce proporcionalmente.[54] A modo de excepción, si una finca queda sin salida a una vía pública, o sin acceso a una red general o al agua como consecuencia de un acto de disposición sobre una o más partes de la finca originaria, o de división de la cosa común, el paso o el acceso debe obtenerse a través de la finca originaria o de la parte de la finca colindante procedente de la originaria, y no debe pagarse indemnización, salvo pacto distinto.[55]

### III

En el recurso ante nos, la apelante plantea que el foro primario incidió tras establecer una servidumbre de paso sin haber recibido prueba pericial en torno a la viabilidad del terreno, el cual presuntamente cedió en el pasado. A su vez, esgrimió que la primera instancia judicial se equivocó al haber establecido la servidumbre de paso, previo a establecer con claridad el tamaño y valor de esta. Luego de un análisis del expediente en su totalidad colegimos que los errores señalados no fueron cometidos y procede *confirmar* la *Sentencia* apelada. Además, tras razonar que los errores se encuentran relacionados, procederemos a discutir los mismos en conjunto. Veamos.

En el recurso ante nuestra consideración, los errores versan sobre la apreciación de la prueba del foro primario hacia la prueba desfilada durante el Juicio en su Fondo, tomando en consideración las determinaciones de hechos que surgen de la *Sentencia* emitida el 24 de octubre de 2023 y notificada al día siguiente. Resulta menester recordar que, en el caso ante nos, se celebró una vista ocular en la cual quedó constituido el Tribunal, estando presentes

---

[54] *Id.*
[55] 31 LPRA § 8549, Art. 962.

todas las partes y sus representantes legales. Posteriormente, se celebró el Juicio en su Fondo.

Es de ver que, para que se constituya una servidumbre de paso, es necesario la existencia de una finca enclavada entre otras ajenas y sin salida a camino público. En el presente caso resulta indudable que la finca de la parte apelada se encuentra enclavada y no tiene acceso a la vía pública.

En la vista ocular, el Tribunal tuvo la oportunidad de observar los caminos en los cuales podía establecerse la servidumbre. Respecto al camino que la apelante planteó que se debía utilizar para la servidumbre, el foro primario determinó que era mucho más oneroso para la parte apelada y expresó que:

> [...] Por otro parte, el otro acceso a la finca del demandante, como expuesto, es atravesando un remanente de otra finca y con una inclinación pronunciada como lo demuestran los Exhibits VIII (E). Además, es mucho más el terreno que hay que recorrer por el remanente y este da acceso a unos caminos de uso público que se conectan, dando finalmente acceso a la carretera municipal 152. [...].

Sin embargo, respecto al camino que la parte apelada planteó que se debía utilizar para la servidumbre el foro primario estuvo de acuerdo y expresó que:

> [...] Como expuesto en las determinaciones de hechos, del camino público de donde se solicita acceso a la finca de la parte demandante queda a pasos. Solo se camina en línea recta unos pocos pasos para llegar desde el camino público hasta la finca del demandante. Esta misma característica lo hace el punto de acceso menos perjudicial para el predio sirviente de la demandada a simple vista. Lo que se solicita es la entrada en continuación del camino en línea recta que a simple vista se aprecia el espacio suficiente para constituir una entrada en el área, sea más arriba o un poco más abajo. [...] Se trata del punto menos perjudicial o incómodo para la finca sirviente y, a su vez, el punto más beneficioso para la finca dominante. Este es el acceso por mucho el más cercano a la carretera estatal número 152. [...]

En su *Sentencia*, el TPI tan solo declaró el derecho de servidumbre de paso a favor de la finca de la parte apelada. Ahora, y como bien dispuso el foro primario, le corresponde a la parte

apelada cumplir con el Artículo 961 del Código Civil,[56] consistente en el pago de la indemnización a la parte apelante para poder establecer la servidumbre.

Reiteramos que, los foros apelativos podremos intervenir con la apreciación del TPI, luego de realizar una evaluación rigurosa y que, de esta, surjan serias dudas, razonables y fundadas.[57] Consecuentemente, las decisiones discrecionales que toma el TPI no serán revocadas a menos que se demuestre que ese foro abusó de su discreción.[58]

Puntualizamos que, nuestro trasfondo doctrinario recae en que, nuestro sistema judicial es uno adversativo de derecho rogado que descansa en la premisa de que las partes, cuidando sus derechos e intereses, son los mejores guardianes de la pureza de los procesos, y de que la verdad siempre aflore salga a relucir.[59] No obstante, cualquier defecto en la denominación del pleito o en la súplica del remedio no impedirá que el tribunal conceda el remedio que proceda de acuerdo con las alegaciones y la prueba.[60]

En resumidas cuentas, las determinaciones hechas por el foro primario sobre la prueba recibida merecen gran deferencia de nuestro foro revisor.[61] Como corolario de lo anterior, si la actuación del tribunal a *quo* no está desprovista de base razonable ni perjudica los derechos sustanciales de una parte, lo lógico es que prevalezca el criterio del TPI a quien corresponde la dirección del proceso.[62] Por consiguiente, los errores esbozados no fueron cometidos por lo que procede *confirmar* la *Sentencia* apelada.

---

[56] 31 LPRA § 8548, Art. 961.

[57] *Pueblo v. Pérez Núñez, supra.*

[58] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013). *Pueblo v. Rivera Santiago, supra.*

[59] *Fundación Surfrider y otros v. ARPe,* 178 DPR 563, 585 (2010).

[60] 32 LPRA Ap. V, R. 71.

[61] *Pueblo v. Pérez Núñez, supra.*

[62] S*ierra v. Tribunal Superior, supra.*

## IV

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones